IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RACHEL L., individually and<br>on behalf of her minor child,<br>JULIA L.,<br><br>   Plaintiffs,<br><br>  vs.<br><br>STATE OF HAWAII, DEPARTMENT<br>OF EDUCATION, and KATHRYN<br>MATAYOSHI, in her official<br>capacity as Acting<br>Superintendent of the Hawaii<br>Public Schools,<br><br>   Defendants.<br>_____ | CIVIL NO. 11-00756 LEK-BMK |

**ORDER GRANTING IN PART AND**
**DENYING IN PART PLAINTIFFS' MOTION FOR STAY PUT**

   Before the Court is Plaintiffs Rachel L. ("Mother"),
individually and on behalf of her minor child, Julia L.'s
("Student," both collectively "Plaintiffs") Motion for Stay Put
("Motion"), filed on August 24, 2012.  Defendants the Department
of Education, State of Hawaii, and Kathryn Matayoshi, in her
official capacity as Superintendent of the Hawaii Public Schools
("Defendants" or "the DOE"), filed their memorandum in opposition
on October 5, 2012, and Plaintiffs filed their reply on
October 19, 2012.  The Court finds this matter suitable for
disposition without a hearing pursuant to Rule LR7.2(d) of the
Local Rules of Practice of the United States District Court for
the District of Hawai`i ("Local Rules").  After careful

consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Plaintiffs' Motion is HEREBY GRANTED IN PART with respect to Plaintiffs' request for reimbursement for Student's placement at Pacific Autism Center and DENIED in all other respects for the reasons set forth below.

## BACKGROUND

The Court and parties are familiar with the factual and legal background in this matter.  In its September 25, 2012 Order ("9/25/12 Order"[1]), the Court affirmed the Administrative Hearings Officer's ("Hearings Officer") Findings of Fact, Conclusions of Law and Decision ("Decision"[2]) dismissing Plaintiffs' Request for Impartial Due Process Hearing ("RIH"), pursuant to the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 et seq.  As set forth in the 9/25/12 Order:

> At the time in question, Student was twelve years old and in the sixth grade at Redemption Academy.  Student is eligible for special education and related services under the IDEA in the category of autism.  Student's former home school was Kaelepulu Elementary School ("Former Home School"), and her current home school is Kailua Intermediate School ("Current Home School").  Student attended Redemption Academy from 8:00 a.m. until 1:00 p.m. and received services from Pacific Autism Center from 1:15 p.m. until 3:30 p.m.

---

[1] The 9/25/12 Order is available at 2012 WL 4472263.

[2] The Decision is attached to the Motion as Exhibit 1 to Plaintiffs' Declaration of Counsel.

2

2012 WL 4472263 at *1.  Plaintiffs filed their RIH on June 14, 2011, the Hearings Officer issued his Decision on November 29, 2011, and Plaintiffs appealed the Decision to this Court on December 12, 2011.

I. **Plaintiffs' Motion**

Plaintiffs ask the Court to order the DOE to (1) immediately pay for Student's special education and related services at Pacific Autism Center from December 1, 2011 through May 9, 2012; and (2) resume Student's stay-put payments through the conclusion of these proceedings and any appeal.

Plaintiffs argue that the DOE refused to observe stay put, even though it stated in a November 2, 2011 letter ("11/2/11 Letter") to Pacific Autism Center that Student was placed there pursuant to a prior stay-put order.  [Mem. in Supp. of Motion at 2 (citing Exh. 2 (11/2/11 Letter)).]  According to Plaintiffs, the DOE has refused to pay for Student's program since the Hearings Officer issued his Decision, and that Student was forced to leave Pacific Autism Center in May 2012 "because of nonpayment."[3]  [Id.]

Plaintiffs argue that stay put is automatic through the pendency of any administrative or judicial proceedings, including appeals.  [Id. at 4 (citing 20 U.S.C. § 1415(j)).]  They assert

---

[3] According to Defendants, Student began attending Variety School after leaving Pacific Autism Center.  [Mem. in Opp., Decl. of Aletha Sutton at ¶ 8.]

3

that Pacific Autism Center is Student's "current placement" going forward for stay-put purposes, as evidenced by the 11/2/11 Letter, and remains the "last agreed upon educational placement." [Id. at 5.]  Plaintiffs contend that the DOE violated the IDEA when it stopped making stay-put payments in December 2011, and unilaterally changed Student's placement.  [Id. at 5-6.]

## II.   DOE's Memorandum in Opposition

The DOE argues in its opposition that Plaintiffs are not entitled to relief under the IDEA's stay-put provision.  It contends that Plaintiff's appeal of the Decision did not mount a substantive challenge to the contents of the individualized education program ("IEP"), "except for a baseless argument that Student's transition plan should have been incorporated into the IEP, which was clearly not required."  [Mem. in Opp. at 2.]

According to the DOE, it paid Student's tuition at Pacific Autism Center throughout the pendency of the underlying administrative proceeding pursuant to stay put, but stopped paying following the November 29, 2011 Decision in its favor. [Id. at 7 (citing Declaration of Aletha Sutton ("Sutton Decl.") at ¶¶ 5-7).]  It argues that Plaintiffs are not entitled to payments after May 9, 2012 because there is no basis for finding that Variety School, or any other private school, is Student's "current educational placement."  [Id. at 16-17.]

4

It points to the Court's holding in the 9/25/12 Order affirming the Hearings Officer's finding that Mother's failure to cooperate with the school in scheduling the IEP meeting caused the meeting to be held on a date when the parents claimed they were unable to attend. According to the DOE, Plaintiffs are not entitled to stay put because they caused the procedural violation complained of, and because the appeal did not bring a non-frivolous substantive challenge to the IEP. It urges the Court to follow the district court's decision in <u>A.R. v. Hawaii Department of Education</u>, Civil No. 10-00174 SOM/RLP, 2011 WL 1230403 (D. Haw. Mar. 31, 2011). [<u>Id.</u> at 6.]

## III. **Plaintiffs' Reply**

In their reply, Plaintiffs argue that a motion for stay put is not a proceeding on the merits, and that it need not establish the traditional factors necessary to obtain preliminary relief. Rather, upon filing "the court must order the status quo preserved." [Reply at 2.] They argue that stay put is "obligatory, not discretionary. It does not require or admit to a balancing of equities by the court." [<u>Id.</u> at 8.] Plaintiffs assert that the instant matter is not similar to that in the <u>A.R.</u> case, and that <u>A.R.</u> did not hold that stay put was inapplicable to procedural challenges. [<u>Id.</u> at 6-7.]

Plaintiffs state that the DOE is "using non-payment as a cudgel to force a student out of a program the DOE does not

want to pay for . . . without first obtaining a determination that the placement offered by DOE is sufficient to address the student's needs." [Id. at 7.]

## DISCUSSION

## I.   Plaintiffs Are Entitled to Stay Put

The IDEA provides, in pertinent part, that:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j); see also 34 C.F.R. § 300.518(a).[4]

"[C]ommonly referred to as the 'stay put' provision, [§ 1415(j)] requires the educational agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved." Johnson v. Special Educ. Hearing Office, State of Cal., 287 F.3d 1176, 1179 (9th Cir. 2002). Under this provision, "the school district and the state [are] responsible for the costs of [a student's] placement

_____

[4]   Section 300.518(a) provides:

Except as provided in § 300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.

6

during the court review proceedings regardless of which party prevails in this appeal." Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990). Upon entry of a stay put order, a school district is obligated to pay the cost of the student's current educational placement pending the resolution of the judicial proceedings. Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1040 (9th Cir. 2009).

"A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." Id. at 1037 (citing Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996)). Indeed, "the stay put provision requires no specific showing on the part of the moving party, and no balancing of equities by the court[.]" Id. at 1040.

Application of the stay put provision does not ordinarily depend on whether the underlying suit is meritorious. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 82 (3d Cir. 1996). Susquenita recognized that stay put "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." 96 F.3d at 83 (quoting Drinker, 78 F.3d at 864-65). Congress made a clear policy choice with § 1415(j) "that the danger of excluding a handicapped child entitled to an educational placement from that placement was much

7

greater than the harm of allowing a child not entitled to an educational placement to remain in that placement during the pendency of judicial proceedings." Cronin v. Bd. of Educ. of the East Ramapo Central Sch. Dist., 689 F. Supp. 197, 202 (S.D.N.Y. 1988).

The DOE urges the Court to follow the decision in the A.R. case, which held that, where the parent failed to cooperate in the development of the IEP, the parent is not entitled to relief under the stay put provision based on a procedural defect that the parent has caused.  Chief United States District Judge Susan Oki Mollway explained her decision in A.R. in a subsequent case, as follows:

> This court has previously refused to read the "stay put" provision of the IDEA as providing a remedy to a parent for an alleged IDEA violation that she herself caused. A.R. v. Hawaii, Dept. of Educ., Civil No. 10-00174 SOM/RLP, 2011 WL 1230403 (D. Haw. Mar. 31, 2011).  In A.R., the parent alleged that the untimeliness of her son's IEP constituted a procedural violation of the IDEA. Id. at *2.  The hearings officer disagreed, declining to conclude that the DOE had procedurally violated the IDEA because the untimeliness resulted from the mother's obstruction, delay, and lack of cooperation. Id. at 11.  This court affirmed the hearings officer, ruling that "when a parent causes the untimeliness and then, without disputing that she caused the untimeliness, appeals an adverse administrative ruling only on the ground that she must prevail as a matter of law whenever an IEP is untimely, the parent may not prevail in the appeal." Id. at *15.

L.I. v. State of Hawaii, Dep't of Educ., Civil No. 10-00731 SOM/BMK, 2011 WL 6002623, at *6-7 (D. Hawai'i Nov. 30, 2011).

Here, as in the A.R. case, the Court accepted the
Hearings Officer's uncontested finding that "Mother failed
to reasonably co-operate in setting up a meeting date prior
to the statutory deadline.  To the contrary, her actions
undermined the DOE's ability to set up that meeting."  2012
WL 4472263 at *13.  The Court found that Plaintiffs were not
denied a FAPE based on the failure to conduct an IEP meeting
with parents present, as there was no procedural violation
like in the A.R. and L.I. cases.  The Court, relying in part
on A.R., ruled as follows in the 9/25/12 Order:

> In sum, the Court concludes in the instant
> matter that Plaintiffs were not denied a FAPE.
> The DOE has an obligation to schedule an annual
> IEP review and, while parental participation is a
> critical component of an IEP meeting, the DOE's
> requirement to secure parental participation has
> to be met with reasonable efforts.  On the
> specific facts of this case, the DOE did not fall
> short of its obligation.  The system functions
> best when parents are required to be reasonably
> responsive to the DOE's efforts to schedule the
> IEP.  Here, the Hearings Officer did an admirable
> job of setting forth the facts in the record
> supporting his conclusion that Parents failed to
> show that the April 14, 2011 IEP meeting was
> improperly conducted without a parent in
> attendance.  The Court AFFIRMS the Decision on
> this issue.

Id. at *14.


This Court agrees with the district court's
decision in A.R., but finds for the purpose of the instant
Motion that A.R. is not governing.  In the instant

9

proceeding, Plaintiffs asserted that "the DOE developed a Transition Plan, but that it was not incorporated into the IEP, and therefore, the IEP did not consider Student's unique needs and was not designed to offer Student educational benefits."  Id. at *15.  The Court found no denial of FAPE, and found that "the Decision correctly held that the DOE was not required to include a Transition Plan in this particular IEP, and that the plan was sufficient to support the Student's transfer to a new school environment." Id.  On the other hand, in A.R., the plaintiff did "not bring a substantive challenge to the IEP by arguing, for example, that the IEP offered by the DOE is not reasonably calculated to enable Joshua to receive educational benefits."  A.R., 2011 WL 1230403, at *6.

     In any event, A.R. did not hold that stay put categorically does not apply to challenges to IEPs based solely on alleged procedural violations of the IDEA.  A.R. explains the scope of its holding as follows:

> While Joshua's mother seeks a ruling that any untimeliness in the issuance of an IEP causes a state to be liable for private school tuition, this court does not make that broad pronouncement.  Instead, this court, focusing on the reason for the untimeliness, confines itself to ruling that, when a parent causes the untimeliness and then, without disputing that she caused the untimeliness, appeals an adverse administrative ruling only on the ground that she must prevail as a matter of law whenever an IEP is untimely, the parent

> may not prevail in the appeal.  That is, the
> parent may not prevail either in the form of
> a reversal of the administrative ruling, or
> in the form of benefits under the "stay put"
> provision.
>
>     This ruling is not only more limited
> than the ruling sought by Joshua's mother, it
> is also more limited than the ruling sought
> by the DOE.  <u>The DOE appears to be seeking a
> ruling that, when a challenge to an IEP is
> based on alleged procedural violations of the
> IDEA, rather than substantive challenges to
> the content of the IEP, the "stay put"
> provision does not apply.  This court need
> not and does not address that broad
> contention.</u>

<u>Id.</u> at *6-7 (emphasis added) (citations omitted).  <u>A.R.</u>

explained that its holding was limited to that particular

factual situation, wherein

> the only reason Joshua remains at [private
> school] is that Joshua's mother caused the
> IEP to be late.  Absent her actions, the
> substantively unchallenged IEP would have
> been in place before the school year began at
> [public school], and Joshua's mother would
> have had no basis to challenge the IEP or to
> seek private school tuition from the DOE for
> the 2009-10 school year. . . .  "Appropriate
> relief" in this case does not include
> reimbursement of [private school] tuition
> based on an IEP's tardiness that Joshua's
> mother herself caused.  To rule otherwise
> would frustrate, rather than advance, the
> intent of Congress.

<u>Id.</u> at *13.

     In fact, <u>A.R.</u> recognizes that "[t]he Ninth Circuit

has clearly held that, throughout court review proceedings,

a school district is responsible for maintaining a placement

that has been determined in an administrative decision to be appropriate until a court directs otherwise." _Id._  Here, the application of the stay-put provision is unequivocal -- because Plaintiffs challenged Student's educational placement in addition to the alleged procedural violations, Student "shall remain in the then-current educational placement . . . until all such proceedings have been completed."  20 U.S.C. § 1415(j) (emphasis added); _see_ _Honig v. Doe_, 484 U.S. 305, 323 (1988) (rejecting "petitioner's invitation to rewrite the statute" when "[f]aced with this clear directive").

When Plaintiffs requested a due process hearing, Student was a qualified disabled student receiving benefits under the IDEA and was placed, in part, at Pacific Autism Center.  That is, Pacific Autism Center was her "then-current educational placement."  Therefore, under § 1415(j)'s clear directive, Plaintiffs were entitled to stay put at Pacific Autism Center pending these proceedings. The right to stay put continues to apply through any appeal to the Ninth Circuit.  _See_ _Rocklin Unified Sch. Dist._, 559 F.3d at 1038 (rejecting "the [School] District's position that the plain language of the stay put provision excludes appeals from final judgments of the district courts from civil actions").

It makes no difference that Plaintiffs did not succeed on the merits of their challenge before this Court. Section 1415(j) enjoins the DOE from changing Students's educational placement "regardless of whether [her] case is meritorious or not," Susquenita, 96 F.3d at 83, and "regardless of which party prevails [on the merits]." Clovis, 903 F.2d at 641.

Nonetheless, this Court recognizes there are practical limitations to stay put's "automatic" nature. "The reference to 'automatic' means 'that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief.' This is a far cry from saying that any request for relief under the 'stay put' provision must automatically be granted." A.R., 2011 WL 1230403, at *10 (quoting Rocklin Unified Sch. Dist., 559 F.3d at 1037). As A.R. discussed, courts have "rejected [the] argument that 'stay put' automatically always applies, no matter what." Id. at *12. Under the present circumstances, however, the Court finds that stay put does apply because, although the parents did not cooperate with the DOE in scheduling the IEP meetings, Plaintiffs challenged both the lack of parental participation and the content of the IEP.

## II.  Scope of Stay Put

13

In their reply, Plaintiffs state that: "At the very least her parents should receive reimbursement for her attendance at Variety School during that time, and payment prospectively for [Pacific Autism Center] for a period equal in length from May 9, 2012, until this matter is concluded." [Reply at 14.]

Although the Court finds that Plaintiffs are entitled to stay put, the Court cannot say as a matter of law that Plaintiffs are entitled to stay-put reimbursement for the Variety School, which is not Student's "current educational placement." It is clear that Plaintiffs are entitled to reimbursement for Student's program at Pacific Autism Center for the period from December 1, 2011 through May 9, 2012, and prospectively through the pendency of these proceedings for time she is actually enrolled at Pacific Autism Center. The proper course for Plaintiffs, however, would have been to file a motion for stay put upon filing their Complaint with this Court, when they were notified by the DOE that it would no longer pay for Student's tuition at Pacific Autism Center.

In any event, the Court is persuaded by Plaintiffs' arguments that Student was forced to withdraw from Pacific Autism Center when the DOE refused to honor

14

stay put, and that this move was not in the nature of a
unilateral placement initiated by Plaintiffs.  The Court
cannot, however, order reimbursement for Student's tuition
at Variety School because it is not her "current educational
placement," and has not been determined to be an appropriate
placement under the IDEA.

The Motion is GRANTED with respect to tuition and
fees only at Pacific Autism Center and to the extent
Plaintiffs' Motion seeks an order requiring the DOE to: "(1)
Immediately pay for [Student's] special education and
related services at the Pacific Autism Center from
December 1, 2011 through May 9, 2012; and (2) Resume
[Student's] stay-put payments through the conclusion of
these proceedings and any appeal."  [Motion at 2.]  The
Motion is DENIED with respect to stay-put payments for any
other placement, including the Variety School.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion
for Stay Put, filed August 24, 2012, is HEREBY GRANTED IN
PART with respect to reimbursement for Student's placement
at Pacific Autism Center and DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 30, 2012.

15



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RACHEL L. V. DOE**; CIVIL NO. 11-00756 LEK; ORDER RANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR STAY PUT